IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

RUSSELL MARTIN,

            Petitioner,

v.                                CIVIL ACTION NO. 5:16-cv-05562

DEPARTMENT OF VETERANS AFFAIRS
and RICHARD A. STONE,

            Respondents.

**MEMORANDUM OPINION AND ORDER**

This is an action seeking judicial review pursuant to 38 U.S.C. § 7462 of the final administration decision of the Principal Deputy Under Secretary for Health. This decision sustained the findings of the United States Veterans Administration ("VA") Disciplinary Appeals Board ("DAB") concerning disciplinary issues relating to the professional conduct of the Petitioner, Russel Martin, P.A., while employed as a physician's assistant at the Veteran's Administration Medical Center (VAMC) in Beckley, West Virginia. The Court has reviewed the Petitioner's *Petition for Review of Administrative Order of the Undersecretary of Health* (Document 1), the Petitioner's *Appellate Brief* (Document 25), the *Respondent's Brief* (Document 26), the Petitioner's *Reply* (Document 28), and the entirety of the administrative record.[1] For the

---

1 The administrative record is divided into four different parts, each labeled as a different exhibit. Those exhibits are labeled (1) DAB Evidence File, (2) Transcripts of the DAB Hearing, (3) Final Decision of Principal Deputy Under Secretary for Health and DAB Decision, and (4) Agency's Document Production Pursuant to the December 1, 2015 Ruling by the DAB. Because this record is sequentially paginated in its entirety, the Court will merely refer to it as

1

reasons stated herein, the Court finds that the decision of the DAB and the Principal Deputy Under Secretary for Health should be affirmed.

## PROCEDURAL AND FACTUAL BACKGROUND

The Petitioner, Russell Martin, was employed as a Physician's Assistant (PA) at the Beckley VAMC's Occupational Health Department. Mr. Martin was appointed to his position under 38 U.S.C. § 7401 and began working at the Beckley VAMC in or around 2003. As part of his duties in the Occupational Health Department, Mr. Martin was required to perform pre-employment physicals on newly hired employees. In 2012, in an action unrelated to the current matter, Mr. Martin was disciplined in the form of a five-day suspension for abuse of a patient and conduct unbecoming.[2]

The allegations from which the disciplinary actions at issue stem occurred in 2014. In or around July 17, 2014, a new Beckley VAMC employee, D.B., came to Mr. Martin for a pre-employment physical. D.B. alleges that the physical started out in routine procedure, and that Mr. Martin asked her normal questions on whether she had high blood pressure, diabetes, or any other serious health issues. (A.R. at 599.) However, D.B. alleges that during the course of her pre-employment physical, and without explanation, Mr. Martin unbuttoned her pants, placed his hand inside her pants and her underwear, and ran his fingers across her genitals and private area to her inner thigh. (*Id.* at 203, 207; 599.) D.B. testified that she was "shocked" and "uncomfortable" and that it was not until she clinched and stiffened up that Mr. Martin informed her he was checking

---

the Administrative Record (A.R.) and cite to the sequential page numbers listed in the lower right corner of each page of the record.
2 While the disciplinary actions by the VA at issue in the case at hand do not stem from Mr. Martin's 2012 discipline, that 2012 action was considered an aggravating factor and is therefore described here.

2

her femoral pulse. (*Id.* at 203, 207.)  D.B. further alleged that, after this incident, Mr. Martin informed her that an electrocardiogram (EKG) was necessary, and returned to the exam room with an EKG machine.  (*Id.* at 599.)  According to D.B., Mr. Martin then placed his hand up the back of her shirt and unclasped her bra without asking her permission.  (*Id.* at 208, 599.)  D.B. also alleges that, at no point during the physical did Mr. Martin offer a chaperone to be in the room. (*Id.*)

At first, D.B. did not report the incident.  However, after speaking with her coworkers and a supervisor, she filed a complaint with the VA Police in September of 2014.  (*Id.* at 202.)  In response to D.B.'s complaint, and because her allegations included sexual misconduct, the VA's Office of the Inspector General (OIG) launched an investigation into Mr. Martin's alleged actions. After a thorough inquiry, the OIG declined to pursue any criminal charges.  However, in February of 2015, Ms. Karin McGraw, the director of VAMC Beckley, convened an Administrative Investigation Board ("AIB") to investigate the matter of Mr. Martin's conduct and make any findings, conclusions, and recommendations concerning any administrative action to be taken regarding Mr. Martin.  Ms. McGraw appointed three VA employees, all PAs and all stationed at VAMC healthcare facilities other than VAMC Beckley, to sit on the AIB.  The AIB conducted interviews of sixteen witnesses, including Mr. Martin, his supervisors, random VA staff on whom Mr. Martin had also performed pre-employment physicals, and D.B. herself.  In the course of their investigation, another VAMC Beckley employee, C.A.,[3] alleged that Mr. Martin also placed his hand down her pants in an attempt to allegedly check her femoral artery pulse without permission

---

3 During the course of the investigation and this appeal, C.A. was married and her initials ultimately changed to C.M. C.A. alleges that Mr. Martin did not go inside her underwear and touch her genitals, however, as was alleged by D.B.

and without any explanation. (*Id.* at 609.) C.A. also alleged that Mr. Martin did not offer or ask a chaperone to be in the room during the physical. (*Id.* at 608.)

On April 17, 2015, upon completion of the investigation, the AIB issued a Report of Investigation wherein it concluded that Mr. Martin engaged in inappropriate touching of two female patients during pre-employment physicals, unprofessional conduct, inappropriate professional practice, inaccurate documentation, failure to document, and breach of patient privacy. (*Id.* at 33-44.) On July 17, 2015, Mr. Martin's direct supervisor, Ms. Lisa Ward, sent Mr. Martin written notice advising him of the findings of the AIB and that the VA proposed he be discharged as a result of his conduct. (*Id.* at 22-28.) Ms. Ward explained the five charges on which his proposed discharge was based and included specifications with each charge. (*Id.*) Ms. Ward also explained that the penalty of discharge in Mr. Martin's case was based on consideration of his actions, the "Douglas Factors,"[4] and the disciplinary action against Mr. Martin from 2012. (*Id.*) Ms. Ward provided Mr. Martin with an opportunity to review the evidence file compiled by the AIB during its investigation. (*Id.* at 26.) She also explained to Mr. Martin his right to submit both an oral and written reply to the notice of proposed discharge to Ms. McGraw "showing why the charges are unfounded and any other reason why [his] discharge should not be effected." (*Id.*)

Mr. Martin chose not to submit a written reply to the proposed notice of discharge, but did provide an oral reply to Ms. McGraw. (*Id.* at 17.) After considering Mr. Martin's oral response, the evidence in the report, and the pertinent factors, on September 23, 2015, Ms. McGraw informed Mr. Martin by memorandum that she would discharge him from service based on the AIB's

---

4 The "Douglas Factors" are a set of criteria established by the Merit Systems Protection Board that supervisors must consider in determining the appropriate penalty to impose on a federal employee for an act of misconduct. *See*, *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305 (1981).

recommendation. (*Id.* at 11-15.) Ms. McGraw also included in her explanation of decision Mr. Martin's right to appeal his discharge to a DAB. (*Id.* at 14.)

On October 19, 2015, Mr. Martin appealed his termination to the VA Under Secretary for Health and requested a formal hearing before a DAB, arguing that the adverse action taken against him was inappropriate and should not have occurred. (*Id.* at 963-970.) On October 27, 2015, the VA convened a DAB and appointed three medical professionals from VAMCs across the United States. (*Id.* at 5-7.) The DAB held a two-day hearing on January 27 and 28, 2016. (*Id.* at 589-853.) After taking testimony from ten witnesses, including Mr. Martin, D.B., and C.M., and evaluating the AIB evidence file, the DAB issued its Board Action on March 10, 2016. (*Id.* at 856-76.) The DAB sustained four of the five specifications regarding the charge of unprofessional conduct; six out of the ten specifications regarding the charge of inappropriate professional practice; and one of the two specifications regarding the charge of inaccurate documentation. The rest of the charges were overruled.[5] (*Id.*) The DAB ultimately held that the decision to terminate Mr. Martin was a reasonable penalty supported by a preponderance of the evidence. (*Id.*) The Principal Deputy Under Secretary for Health reviewed the DAB's analysis and findings, as well as the evidence and testimony, and on May 13, 2016, issued a memorandum executing the decision of the DAB and affirming Mr. Martin's termination. (*Id.* at 856.)

---

5 For the sake of brevity, the Court does not list every single specification examined by the DAB, but incorporates the DAB's entire report by reference, which lists in detail its reasoning for sustaining or not sustaining each specification under all the charges against Mr. Martin.

Shortly thereafter, on May 21, 2016, Mr. Martin filed the instant action petitioning this Court for review of the Under Secretary's order. Both Mr. Martin and the VA have filed their memoranda, and the petition is fully briefed and ripe for review.

## STANDARD OF REVIEW

Pursuant to 38 U.S.C. § 7462(f)(1), a VA employee appointed under 38 U.S.C. § 7401(1) may appeal to a district court a DAB decision:

> In any case in which judicial review is sought under this subsection, the court shall review the record and hold unlawful and set aside any agency action, finding, or conclusion found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (C) unsupported by substantial evidence.

38 U.S.C. § 7462(f)(2). See also, *Claasen v. Brown*, 33 F. Supp. 2d 511, 514 (N.D.W. Va. 1998), *aff'd,* 201 F.3d 435 (4th Cir. 1999). "The Court's review under this section 'directly mirrors the standards for judicial review of other administrative actions.'" *Beck v. Shinseki*, No. CV 113-126, 2015 WL 1202196, at *11 (S.D. Ga. Mar. 16, 2015) (internal citations omitted); *see also*, *Pocha v. McDonald*, No. CV 15-475 (DWF/FLN), 2016 WL 916417, at *4 (D. Minn. Mar. 10, 2016) (finding that the standard under 38 U.S.C. § 7462(f)(2) "mirrors the standards for judicial review of other administrative actions, and analogous administrative law precedents are applicable.").

An agency's decision is considered arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important

6

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Lerner v. Shinseki*, No. 3:12-CV-00565, 2013 WL 5592906, at *5 (W.D. Ky. Oct. 10, 2013) (citing *Taylor v. Principi*, 92 F.App'x 274, 276-77 (6th Cir. 2004)). "The arbitrary and capricious standard is a highly deferential standard which presumes the validity of the agency's action . . . Ultimately, the court's review of the administrative record is intended to inform it of the propriety of the agency's decision, not to enable the court to make its own decision . . . ." *W. Virginia Dep't of Health & Human Res. v. Sebelius*, 172 F. Supp. 3d 904, 914 (S.D.W. Va. 2016) (Johnston, J.) (internal citations omitted).

Further, an agency's decision may be overturned if it is unsupported by substantial evidence. "The Supreme Court has defined substantial evidence as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, when reviewing a decision under this standard, the Court "do[es] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Secretary. Where conflicting evidence allows reasonable minds to differ . . . the responsibility for that decision falls on the Secretary." *Id.* at 302 (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

**DISCUSSION**

Mr. Martin argues in his petition that all of the charges sustained by the DAB and affirmed by the Under Secretary of Health should be overruled and his employment with the VA reinstated. Mr. Martin argues that the DAB's decision to terminate his employment was arbitrary and capricious, was obtained without following the procedures required by law or regulation, and was unsupported by substantial evidence.

*A. Due Process Arguments*

Mr. Martin's first argument, and an argument that runs throughout the course of his brief in support, is that the VA intentionally violated his due process rights. First, he asserts that the VA intentionally withheld material evidence, and that this due process violation was continually compounded by the further action of the Agency. He argues that the VA "knowingly and intentionally denied him notice of the evidence upon which he was charged" and then forced him to defend himself without said information in violation of his right to due process. (Pet.'s Brief at 12.) Mr. Martin asserts that the agency also denied his access to the supervisor's notes and Reports of Contact by D.B. and D.B.'s direct supervisor, and that this violation prevented him from accurately answering questions during the AIB investigation. Mr. Martin asserts that certain pages of the AIB report provided to him were missing, and that he was denied the opportunity to look at certain patient records concerning his pre-employment physicals, a due process violation that again prevented him from properly defending himself during the AIB investigation. According to Mr. Martin, the agency further violated his due process rights by withholding information Mr. Martin sought pursuant to his union's collective bargaining agreement.

Throughout the AIB and during his oral statement in opposition to the AIB's findings, Mr. Martin asserts that the agency did nothing to correct these due process violations.

All of these due process violations were further compounded, according to Mr. Martin, by both Ms. McGraw and the DAB. Mr. Martin argues that Ms. McGraw failed to ensure that the administrative record to which Mr. Martin had access was correct and complete, and failed to ensure Mr. Martin was afforded the appropriate due process rights throughout the course of the AIB. Mr. Martin also contends that the DAB left these due process violations uncorrected. He argues that the DAB rulings on his motion to set aside the termination for lack of due process, and its ruling excluding a number of his proposed witnesses, further perpetuated the due process violations that occurred below. He specifically asserts that the DAB barred him from calling witnesses that would have testified in his favor and limited his cross examination of the VA's witnesses in a manner that completely prevented him from admitting evidence that worked in his favor. Mr. Martin argues that the DAB went so far as threatening and attempting to intimidate his counsel. Taken together, Mr. Martin argues that these actions violated his constitutional right to due process and a proper procedure such that the Agency's action should be set aside.

The VA counters that Mr. Martin's due process rights were not violated. The agency contends that, from the beginning of the process, Mr. Martin was given notice of the charges in writing after the completion of the AIB investigation, an opportunity to respond to the charges both orally and in writing and an explanation of the evidence against him with an opportunity to review the AIB investigation file. Once Ms. McGraw made the ultimate decision to terminate based on the AIB's investigation, Mr. Martin was again given an explanation of the rationale and evidence and informed of his appellate rights. Further, in leading up to the DAB hearing, Mr.

Martin was given all the documents deemed relevant to the investigation and process. The VA asserts that it was within the DAB's responsibility and discretion to make determinations concerning the relevancy of evidence, to determine the credibility of witnesses, and to limit the scope of Mr. Martin's cross examination as necessary. Thus, the VA argues that Mr. Martin has shown no due process violation.

The Court finds that Mr. Martin's right to due process was not violated. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldrigde*, 424 U.S. 319, 333 (1976) (internal citations omitted). When examining the discharge of an Ohio public employee, the Supreme Court of the United States held that "[t]he essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The Court further held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* The Fourth Circuit followed the Supreme Court's holding in examining a public employee's discharge and the sufficiency of the discharge process in *Curtis v. Montgomery Cty. Pub. Sch.*, 242 F. App'x 109 (4th Cir. 2007). In relying on *Loudermill* to hold that a discharged employee's due process rights do not include detailed notice of potential disciplinary actions, the Fourth Circuit affirmed that written notice of the charges, an explanation of the employee's evidence, and an opportunity to present one's side of the story in a discharge procedure is a list of rights that was "meant to be exhaustive," and "'to require more than this prior to termination would intrude to an unwarranted extent on the government's interest

10

in quickly removing an unsatisfactory employee.'" *Id.* at 112 (citing *Loudermill*, 470 U.S. at 546). In other words, "a pretermination opportunity to respond, coupled with posttermination administrative procedures provides 'all the process that is due.'" *Holland v. Rimmer*, 25 F.3d 1251, 1258 (4th Cir. 1994) (quoting *Loudermill*, 470 U.S. at 546).

Here, after the investigation and recommendation of the AIB and before deciding to formally discharge Mr. Martin, the Beckley VAMC informed him of the AIB's findings and recommendations with explanations for each, provided him with an opportunity to review the AIB's investigative record, and explained that he would have the opportunity to present his side of the story in both written and oral form to Ms. McGraw before a final decision was made. Mr. Martin chose not to submit a written statement to Ms. McGraw, but did submit an oral statement. Further, after Ms. McGraw made the decision to terminate his employment, Mr. Martin was given the opportunity post-termination to appeal the decision to a DAB and ultimately have that decision reviewed by the Deputy Under Secretary of Health.

Concerning the AIB investigation itself, the Court finds that, as a non-adjudicative board, the subject of an investigation by an AIB is not entitled to a full panoply of due process rights. *See*, *Hanna v. Larche*, 363 U.S. 420, 442-43. Regardless, Mr. Martin was notified of the findings and recommendations of the AIB and given the opportunity to present Ms. McGraw with his side of the story before her decision to terminate his employment. Thus, the AIB investigation did not violate any of Mr. Martin's pre-termination due process rights.

Further, the DAB did not violate Mr. Martin's due process rights through their evidentiary rulings or credibility determinations. Before his DAB hearing, Mr. Martin was provided with the complete AIB record and the patient examination records he requested. Mr. Martin's arguments

11

that the DAB abused its discretion by finding that the information the union requested on his behalf was not germane to the process or relevant to the issues at hand are without merit. The DAB was well within its discretion in finding that the union information requested on behalf of Mr. Martin was irrelevant to the process because it was not considered in his termination. *See*, *Monk v. Potter*, 723 F. Supp. 2d 860, 883-84 (E.D. Va. 2010), *aff'd sub nom. Monk v. Donahoe*, 407 F. App'x 675 (4th Cir. 2011) (affirming the ALJ's decision to exclude evidence in an agency appeal that was deemed irrelevant by the agency because "it had no bearing" on the petitioner's issue and was not considered below). Further, nothing in the record indicates that the DAB abused its discretion in limiting the witnesses Mr. Martin attempted to call, or in making credibility determinations. "[A] party in an administrative discharge hearing does not have an absolute right to cross-examine witnesses." *Kreso v. Shinseki*, 67 F. Supp. 3d 1235, 1252 (D. Colo. 2014), *aff'd sub nom. Kreso v. McDonald*, 631 F. App'x 519 (10th Cir. 2015). In fact, the record reflects that Mr. Martin did cross examine every witness called by the VA during the DAB hearing. That Mr. Martin was limited by the DAB to questions only within the scope of the VA's direct examination does not establish a due process violation, especially when Mr. Martin admits that the strict rules of evidence do not apply in DAB hearings.

Finally, the record reflects that, during his testimony, Mr. Martin was given adequate opportunity to explain his AIB testimony and how it might be inconsistent with his testimony before the DAB. The DAB was in the best position to make credibility determinations, including the credibility of Mr. Martin. The record, including the DAB's final decision, reflects that the DAB did just that. The DAB explains that they found D.B. a very credible witness, and that her "testimony with this traumatic event has remained consistent and was considered compelling by

the board." (A.R. at 859.) The DAB further found that, throughout the entirety of the process, "the testimony of the Appellant was concerning to the Board." (*Id.*) Such a credibility determination was within the DAB's authority to make and is not an abuse of discretion. *See*, *Kreso*, 67 F. Supp. 3d at 1252 (Affirming a DAB's decision based on credibility determinations when "the findings of the DAB . . . do not focus on the discrepancies of [the appellant] . . . Rather, the DAB found the testimony of [a witness] to be credible on the key facts in dispute.").

In sum, neither the AIB, the Beckley VAMC director, nor the DAB violated Mr. Martin's due process rights. From the outset, the record reflects that Mr. Martin was given written notice of the charges and findings of the AIB, an explanation of the employee's evidence with the opportunity to review said evidence, and an opportunity to present his side of the story. After taking part in these procedural processes, he was further afforded an opportunity to appeal his termination to the DAB and have that decision reviewed by the Deputy Under Secretary for Health. The DAB's evidentiary rulings and credibility determinations were within the Board's authority and did not constitute due process violations. Therefore, the Court finds that the VA's decision to terminate Mr. Martin should not be overturned based on his due process argument.

   B. *Substantial Evidence*

Secondly, Mr. Martin asserts that the VA's findings are not supported by substantial evidence. Mr. Martin argues that the VA ignored substantial evidence available to it in reaching its conclusion. He asserts that both the AIB and the DAB relied heavily on the testimony of D.B. without questioning her improper motivation, and that both bodies also unfairly relied on the testimony of other witnesses while disregarding Mr. Martin's testimony. Mr. Martin further contends that by its evidentiary rulings and its failure to allow him to cross-examine the VA's

13

witnesses outside the scope of their direct examinations, the DAB "successfully eliminated Martin's ability to defend himself once he had the possession of the material evidence needed from the outset of this action." (Pet.'s Brief at 28.) These actions allowed the DAB to "disregard all of Martin's testimony in spite of substantial evidentiary support," according to Mr. Martin, including what he describes as the "personal animosity" of D.B.'s supervisor and Ms. McGraw because of his union activities, and his personal testimony that he did not remove the clothing of patients. (*Id.* at 27-29.) Mr. Martin argues that, based on the AIB and DAB errors throughout the process, the VA's decision to terminate him was not based on substantial evidence, but that the evidence is actually contrary to what the VA found.

The VA counters that each of the DAB's findings were supported by substantial evidence. The VA analyzes each DAB finding separately and argues that in each charge, Mr. Martin's opposition to the DAB's findings is merely a challenge to the DAB's credibility determinations and its weighing of the evidence. The VA asserts that this Court should not attempt to re-weigh the evidence or make witness credibility determinations, and that the agency's decision to terminate Mr. Martin should, therefore, be affirmed.

The Court finds that the DAB's decision regarding each charge was supported by substantial evidence. Nearly every argument proffered by Mr. Martin as to why the VA's decision is unsupported by evidence rests on a complaint that the DAB regarded Mr. Martin's testimony as less credible than that of other witnesses. (*See* Pet.'s Brief at 27-31.) A court reviewing an agency's decision, however, is not in a position to re-weigh conflicting evidence or make credibility determinations when deciding whether the evidence was substantial. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Beck v. Shinseki*, No. CV 113-126, 2015 WL

1202196, at *21 (S.D. Ga. Mar. 16, 2015) ("This Court is not the trier of fact, and it cannot overrule a credibility determination made by those who actually heard the testimony.")

Further, ample evidence existed throughout the record, and was cited by the DAB in its report, to support its findings under each specification it sustained. D.B. testified both to the AIB and the DAB that Mr. Martin placed his hands down her pants and touched her genitals without asking permission or explaining what he was doing, and without ever asking D.B. if she would like a chaperone in the room. (A.R. at 858-863.) Her testimony did not change throughout the entirety of the process, and the DAB found her to be very credible. (*Id.* at 859) The DAB further cites to VA Standards explaining that "this examination is not included as part of any routine pre-employment examination." (*Id.*) Witness C.A. also testified throughout the entirety of the process that Mr. Martin placed his hand inside her pants to check her femoral artery without asking permission or explaining what he was doing, and the DAB found her testimony credible. (*Id.* at 860-64.) During his own testimony to the AIB and before the DAB, Mr. Martin himself testified that he conducted femoral artery exams during pre-employment physicals if the employee indicated signs of peripheral vascular disease, individuals over 40 years of age, and those with family history of heart disease or diabetes. When asked why he would perform a femoral artery examination on C.A., who exhibited none of those risk factors, Mr. Martin stated he "[could not] answer that." (*Id.* at 863-64.) However, T.C., another witness Mr. Martin examined, testified that he did not perform a femoral artery examination on her although she did exhibit the risk factors Mr. Martin testified he looked for in performing femoral artery examinations. (*Id.* at 864.) Regarding Mr. Martin's charges on a lack of chaperone use when examining women, Mr. Martin himself testified that he would secure a chaperone if a patient requested one. However, based on

the testimony of Mr. Martin's direct supervisor and a fellow physician's assistant and member of the AIB, the DAB found that providing a chaperone would not be a problem, and that to do so was the appropriate standard of care. (*Id.* at 867-69.)

Each witness who alleged Mr. Martin improperly examined her testified before the DAB, and the DAB found that Mr. Martin's testimony was less compelling than that of other witnesses. This Court is not in a position to make credibility determinations or substitute its judgment on witness credibility for that of the Agency, and the Court therefore finds that the VA's credibility determinations were appropriate. Those witness statements, together with the other evidence in the record, constitute sufficient evidence to support the DAB's decision. Based on the totality of the evidence and testimony in the record, the Court finds that the decision to terminate Mr. Martin was supported by substantial evidence.

*C. Arbitrary and Capricious*

Finally, Mr. Martin argues that the VA's decision was arbitrarily and capriciously made. Similar to his arguments throughout, Mr. Martin argues that, in violation of VA Handbook 0700, the AIB and the DAB failed to elicit proper information and evidence. He argues that the AIB only considered evidence from biased witnesses, and should have sought information from more Beckley VAMC employees to properly follow the procedures in VA Handbook 0700 and not issue an arbitrary decision. Mr. Martin asserts that the AIB and DAB further failed to consider the VA's fault in the lack of chaperones included in the charges against him, and arbitrarily disregarded Mr. Martin's testimony in a manner that made it "blind to its own culpability." (Pet.'s Brief at 24.) Mr. Martin also argues that the AIB members did not even understand what their

16

responsibility was in investigating the issue, and that reliance on their investigation was therefore arbitrary and capricious.

The VA counters that the DAB's decision was not arbitrary or capricious in any way. The VA argues that the DAB considered all the necessary evidence and issues involved, afforded Mr. Martin the appropriate procedure throughout the process, and based its final decision on facts and evidence clearly established in the record.

After a thorough review of the record, the Court finds that the DAB's decision was not arbitrary or capricious. "[I]n assessing whether an agency determination is arbitrary and capricious, the Court's role is to ensure that the applicable procedures have been followed and that the agency came to a rational conclusion as a result of 'deliberate, principled process.'" *Beck*, 2015 WL 1202196, at *14 (citing *Claasen*, 33 F.Supp.2d at 514). Here, the DAB based its decision on certain facts not in dispute, on exam records of employees examined by Mr. Martin, on testimony given by Mr. Martin and those employees he examined, and on testimony of additional witnesses, including one of the investigating members of the AIB. The DAB considered the ways in which Mr. Martin's testimony conflicted with that of D.B. and other witnesses, but ultimately determined that Mr. Martin's testimony was not particularly credible. The DAB specifically noted that D.B.'s testimony had "remained consistent throughout," and that she "had absolutely nothing to gain by telling her story of this incident," while Mr. Martin consistently accused her and all of the other testifying individuals of being "less than honest." (A.R. at 859.) There is no evidence in the record to suggest that the DAB's credibility determinations were arbitrary or capricious.

Specifically regarding Mr. Martin's use of the femoral artery pulse examination, the DAB referenced VA standards in finding that a femoral artery examination should not be part of a routine pre-employment physical. (*Id.* at 863.) The DAB also specifically relied on the fact that Mr. Martin testified that he would normally perform a femoral artery examination if the patient employee was overweight or had a personal or family history of heart disease or diabetes, and further pointed to evidence that the femoral artery examinations Mr. Martin was found to have performed were on employee patients who did not satisfy these criteria. (*Id.* at 863-65.)

In sum, and based upon the foregoing, the Court finds that Mr. Martin has failed to present any specific aspect of the DAB's process that amounts to an arbitrary and capricious decision. The board examined evidence, listened to testimony, and made credibility determinations as to that testimony in making its decision, and Mr. Martin has failed to show that the board did not follow applicable procedures or come to a rational conclusion based on the evidence.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Petition for Review of Administrative Order of the Undersecretary of Health* (Document 1) be **DENIED** and that the final decision of the Disciplinary Appeals Board, as approved by the Principal Deputy Under Secretary for Health, be **AFFIRMED**. The Court **ORDERS** that the *Respondent's Unopposed Motion to File Administrative Record Under Seal* (Document 12) and *Motion to File Administrative Record (Volume II) Under Seal* (Document 18) be **GRANTED** and that the administrative record be **FILED UNDER SEAL**. Further, the Court has considered the *Petitioner's Motion for Extension for Reconsideration of Petitioner's Motion for Page Limit Extension* (Document 24), and having found that the Petitioner has failed to state good cause for

reconsideration of the Court's prior ruling on extension of the page limit, **ORDERS** that the motion be **DENIED** and that any other pending motions be **TERMINATED AS MOOT**. Finally, the Court **ORDERS** that judgment be entered in favor of the Respondent and that this case be **DISMISSED** and **STRICKEN** from the docket.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 1, 2017

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA